Well, we lost most of the courtroom, but we still have our friends from West Point, Virginia, West Point High School. I'm sure you got all the subtleties of the last two arguments. The real test will come right now. So the next case we're going to hear is Williams v. Lendmark Financial Services, and Mr. You're going to have to help me, Zajdel. Zajdel. Zajdel. Thank you. That was close. That was good. May it please the Court, my name is Corey Zajdel, and I'm honored to present argument here in the Fourth Circuit for the fourth time this session. Today on behalf of consumer Michelle Williams, she entered into a loan agreement with Appellee Lendmark Financial Services for a term of 36 months, and during that time she was charged 30 late fees. This appeal requires this Court to provide meaning to a statutory term, Scheduled Payment, under the Maryland Commercial Article 12-1008C, and to the word day as used throughout the loan agreement between the parties. I'd like to start off today with the Scheduled Payment issue. And with respect to Scheduled Payment, if the Court finds that a late fee is not part of a Scheduled Payment, as that term is used in the statute in this Court, or if the Court finds that the application of payments first to late fees, then to interest, then to principal, violates CLEC, then this Court would necessarily reverse and remand. I'm not sure that's the issue at all. I'm not unsympathetic with what your arguments are, but it seems to me that how the payment is applied is distinct from the payments she had to make. The payments she had to make were the $102 a month. Correct. And the best argument you have is the December payment would be applied to late charges and therefore nothing to principal or interest. But she still made the payment as agreed. The fact that she had late charges would simply extend the payments out, and the note provides that, that if she doesn't complete the payments within the 36 months or whatever, interest continues. But she made the payment as agreed, and just the fact that you apply it to late charges first and then interest is not the violation. The violation is that they didn't accept your $102 payment, which was the agreed upon payment. Yes, Your Honor. And as of that December payment, as the record reflects, she had made the $102 payments throughout that life of the loan, and nonetheless she was still charged a late fee on that December payment. She was probably charged properly on the late fees because she was late. We can address that. You have an argument about that. But she was charged late fees because she didn't pay within five days. But at one point, the late fees accumulated in December, I think it was, they accumulated such that all she was paying was late fees because they'd accumulate. But she still made the payment as agreed. The note defines the installment. It defines the amount. And it says each installment is $102.23 or whatever it is. She paid $106. I don't know why, but that was what she was paying. And it seems to me that they had it right under the note to charge a late fee, but they didn't have a right to demand more than $106. What they had a right to do is to keep collecting from her until she discharged the entire debt. Right. Well, I understand, Your Honor. You should say thank you, Your Honor. Thank you, Your Honor. And I understand what you're saying. I think that's the issue, isn't it? That is the argument. But the reason that is the argument is because of the accumulation of the late fees, the payment would not have been short, according to Landmark, if the late fees. It was never short. But she was always paying more. She was supposed to pay $106 or $102 a month. Correct. And she kept paying that. What they did is they construed it in a fashion where the late fees accumulated and she should be paying $170 that month or $220 or whatever you add the late fees on so that she would end up paying principal and interest of $106 plus the late fees. Correct. And that isn't what the note provided. Right. I'm agreeing with you wholeheartedly. But that isn't the way you presented the issue. It seems to me the issue isn't how you apply a payment. They probably applied it correctly. You apply the late fees and interest and principal. There's nothing illegal with that, is there? Well, I think that is illegal as well. Why? Under what provision? Well, because CLEC, although it doesn't define scheduled payment, it refers to what a scheduled payment is throughout the entirety of the statute. And in each version of it, it specifically refers to the principal and interest. I understand. That's a scheduled amount. But doesn't CLEC authorize, well, the note certainly does, but doesn't CLEC authorize application of the payment first to pass due interest and then the principal? And how about first to a late charge and then interest and principal? Your Honor, I don't disagree with you that they could, that the statute would authorize application of payment toward interest before principal. There's no argument there. How about a late charge before interest? That's where it's our position that Lendmark is violating CLEC. Where is it violated? Show me that. On 12-1008-B is what says you can charge a late fee as long as it's in the note. As long as what? As long as it's stated in a certain way within the loan agreement. Right. And it is in the loan agreement. Correct. Yes. And then in C, right underneath it, it says imposition or the way that you can assess this late fee. Right. And in that provision, it refers to applying payments towards scheduled payments in the order in which they become due. And a late fee is not part of a scheduled payment. Sure it is. It's required, it's not part of the, the installment is defined as principal and interest, but the note also provides for a late charge. And it's an accounting principle as to what order you apply them. And it seems to me that as long as she keeps making payments, what's going to happen is she's going to end up paying 42 months instead of 36 because she's accumulated these late charges. And she's going to pay interest on that. Correct. But it's a different issue as to what payment she makes and how you apply the payment. That's my whole point. And I don't think that was the way you stated the issue in this case. No, I understand, Your Honor, and we agree. She made all of her payments that were required by the loan agreement as they were scheduled, $106 times the number of months all the way through December 1st and then also through February 1st, 2011. I think it goes a little bit further than that, but the chart that I included in the brief was for the purpose of illustrating that at least that far into the loan she had made all of her payments, the 100, actually more than what the payments that were required as of those dates. So she was performing under the loan properly. It was landmark. She was paying late for a lot of them. Correct, Your Honor. And CLEC, as you know, allows one late charge for each delinquent payment. And that's what they imposed, just one. That's right. But by the time you get to December, there was an accumulation of late charges. And so if they applied it, first the late charges, then the interest, it turns out that the December was being applied only to late charges. And they gave her another late charge because she didn't pay principal or interest. Right, Your Honor. But the note didn't require her to pay principal or interest. The note required her to pay $102.23 for each installment. Right, Your Honor. By the time we get to December, we're paying late fees on late fees. Exactly. I think you probably have a pretty good point on that. We'll ask him about that. Yes, Your Honor. And I cited to the court the Federal Trade Commission's credit practices rule, 444.4. Well, it agrees with you, but I'm not sure you need it. You added that late, and they don't like the fact you added it in your reply brief. Right. And I understand that. And what I'd say is it's not a new issue that's being argued. The issue's been in existence since being in litigation. It's just I'm not citing it to say that that is the violation that causes this CLEC violation. It's there as authority to support the argument that's already in the briefs. All right. And I do want to address the day in the contracts issue. And I want to start from the proposition that Judge Carl's got it right before we talk about it, because Judge Carl's interpreted day in the contract to mean a business day. So rather than – It's got to do with the price of fish. In other words, she did not pay within five days. And the note says she has to then pay a late charge. They could assess the late charge on day one as an accounting principle, internal accounting principle, then remove it if she paid it within five days. They assessed it on the end of the fifth day, because it was impossible for her to pay it on time for the next day. But that's an internal counting. The note doesn't say anything about that. The note says if she doesn't pay within five days, and she didn't on those cases, she pays a late charge. Well, Your Honor, I'm talking about instances where she actually did pay within five days. That's when this would be relevant. There's many instances within the repayment history where she does make the scheduled payment, the $106, within those five days, whether it's business days or calendar days. She makes the payment, and then she is still assessed a late fee for that month. She pays on the second. I wasn't aware of that. I thought the problem was that they were assessing on their books the late charge at the end of the fifth day after the close of business. Right. But that was what they were doing. Did they ever do that in a case where she paid that day? Yes. February 6th, 2011. She pays February 6th, that payment. And I have a chart for that specific payment. I'm sorry. It might be April 6th. I'll find it on rebuttal. Your argument is that there are a couple of times. How many times are there that she paid on the fifth day? Well, there's a couple of instances within the repayment period during the loan term where she pays within those five days. Oh, I know. They didn't charge late charges there. But I'm talking about on the fifth day. They paid within the fifth day, by the fifth day, and they imposed a late charge. That's what I'm interested in having you point out. Sure. Well, I'll go back through the chart and I'll let you know about that. But what I want to add to this instance with if Judge Carl is correct that it's a business day, then the word day in the contract, it needs to be interpreted as a business day throughout the contract. Why? Why business day? Because unlike a statute, the contract needs to be interpreted in the ordinary course, what a reasonable person would assume this means. And I don't think an ordinary person, a consumer entering into this contract, is going to look at a contract and say, oh, day here means it's a calendar day. Day here means it's a business day. Was there ever an occasion where she made a payment between 530 and midnight on the last day of the grace period? No, Your Honor. Well, then what difference does it make? Would we even need to get to this discussion of whether or not it was a business day or a calendar day? That only matters if she made a payment between 530 and midnight, right? That's if the court were to reverse the lower court and rule that it's a calendar day. I'm sorry. What difference does that make? My question is exactly that. No, I understand. She didn't make a payment in that period of time. They're posting this late fee at something like 8.30 in the evening on the fifth day, but the record indicates that there was no way for her to make a payment after 5.30. So what difference does it make if they posted it at 8.30 or at 12.01, the first minute of the sixth day or the day after the grace period? She never made a payment during that period of time, so what difference does it make? I understand your question. Maryland law distinguishes between when a creditor is allowed to assess a late fee, and there's a case out of the Maryland Court of Appeals which specifically discusses, I want to say it's Dua v. Comcast. You get this assessment. The briefs talked about it. I couldn't find that in the statute anywhere. The note says that you pay a late charge when she doesn't pay within five days. They can assess it before that payment on their books, and they can readjust it as she makes her payments. This is a bookkeeping entry, and it does not regulate the bookkeeping of the company. They say she can't charge. They can't charge a late charge until she's delinquent five days. And that in every case, you're going to tell me otherwise, but as far as I understood, every case where they charged a late charge, she had not made payment within the five days, the grace period. Your Honor, I see my time's up. Can I respond to this? Yes. I am going to go back and look to find those entries. Good. Why don't you bring it back up on rebuttal? Okay. Okay. Thank you. All right. Mr. Moffitt. May it please the Court. My name is Brian Moffitt. I represent Lendmark Financial Services in this appeal. The district court got it right when it dismissed Ms. Williams' claims challenging the manner in which her payments were applied, and the district court also got it right when it entered summary judgment in favor of Lendmark where the undisputed material facts showed that each time Ms. Williams paid a late charge, that late charge or that late fee was actually charged after the five-day grace period because it is. What difference does it make when it's charged? I mean, there is no regulation as to when you put it on the books. You're right, Your Honor. The question is if she's late, she has to pay a late charge. And the answer is, your answer is she was late each one of these times, and if you put it on your books ten days later, you would still get the late charge. You can put it ten days early. You'd still get the late charge because it says if she doesn't pay within the five days, she has to pay a late charge and use the word pay. And that's exactly right. The reason why I'm using the word charge is because that's the word that is used in Section 12-1008, and what it says is that the credit grantor can charge a late fee if the note permits. I don't use the word assessment because I agree, Your Honor, if you look at CLEC and if you look at the note. Let me ask you a question as a factual matter. Was there a payment that she made within the five days where you charged a late fee? That is the December. I know the December, but he's talking about there may be February or April. There's a February 2011. Right. Where the same instance occurred as in December. Okay, but that's a different problem. That's a different problem, and that's a claim that the district court was never presented with because the claim that was before the district court was that LEMARC violated CLEC in the manner in which it applied the payment first to late fees, then to accrued interest, and then the principal. That's the claim. If she made the payment, let's take December as a good example. She made the payment within five days. She paid $106 in December. You charged her a late charge. Now, why? Because the way the accounting worked is that when every payment gets applied first to late fees, then the interest, and then the principal. Well, when she makes a payment and it's late, she gets assessed a late charge. So the next time she makes a payment. It's $25 short. $25 short. But it doesn't say that. You don't add the late charges to the payments. The note doesn't say that. No. CLEC says that, Your Honor. For the CLEC, though, following up on Judge Niemeyer, I mean, the only reason you're in CLEC is you want to be able to move the interest rate up. Is that right? I mean, it's the main reason. Otherwise, you'd be limited to a lower interest rate. You go into CLEC so you can consumer law, whatever, so that you can charge this 20% interest. She's late for the payment, $25. She comes back the next month. She makes that exact payment that she's supposed to make or a payment for the statute. But what you say is that $25 makes that next payment late because you're going to subtract $25 from it and add another $25 to it. And then you keep adding the $25 so eventually, as Judge Niemeyer said, not only is she paying nothing but late fees, she's paying late fees on late fees. And by the way, the principal is still gaining interest of 20-some-odd percent per month. Now, I don't know much about Maryland Consumer Credit Law, but that doesn't sound right to me. The Federal Trade Commission doesn't like it. And that's a separate issue, Your Honor. And it's a separate issue because of whether they can raise it. Well, it's a separate issue altogether, Your Honor, even if they could raise it. Let's go to the note. The note says she has to make installments of $106. Let's use $106. It's $102, whatever it is, but she paid $106. It says she has to make installments of $106 at the first of each month. And then it talks about how to apply the payments. And it says if she doesn't pay it within then she's going to get charged a late charge. And then it says that each payment, $106, is going to be applied first to the late charge, then to interest, and then to principal. That's all fair. So she keeps making these payments, $106, and she gets behind. Now, what it means is she's going to have to continue making 106 payments until you discharge those late charges. But it doesn't mean the installment amount changes, and the note doesn't provide that. In other words, you don't say $106 plus the late charge. It says how to allocate the $106. Allocate it first to the late charge, then to interest and principal. And you charge late charge on late charge. Then we look to CLEC, and Subsection C says, All payments shall be applied to the satisfaction of scheduled payments in the order in which they become due. All payments. And the payment here is a defined term both in the statute and in the text of the note. The payment is $106. That's what it defines a payment. Well, what I'm suggesting, Your Honor, is the payment could be $106. It could be $300. But it was not defined that way. Well, I think the statute uses the word payment, and what I'm suggesting is payment in the statute is not synonymous with the term installment as used in the note. What the statute says ---- I beg to differ because the note uses it interchangeably. It first talks about installment. Then it talks about payment. Then it talks about installment. It's referring to the same thing. What I would suggest is the term scheduled payment, as you recognize, includes late fees. So when you take a payment and apply it first to late fees, then to accrued interest, and then the principal, if the borrower did not include the late fee in that payment, there's a portion of the balance. It's included in there. The note provides when you get the $106, the note authorizes you to apply that $106 first to the late charge, and then to the interest, and then to the principal. That's what it authorizes you to do, but it doesn't authorize you to collect more that month. What it does, the note anticipates that the payments will extend beyond the term of the note, and the note says then you have to pay interest on those payments. And what I'm suggesting is that when the borrower doesn't pay enough in a particular month, there's a principal that is owed. In December, for example, there was $54 of principal that went unpaid. I'm looking in the note. I've read this note several times before coming here. I didn't see anything like that. I believe what Lenmark was trying to do was reconcile the terms of the promissory note with the provisions of CLEC, specifically 12-1008C. CLEC just says you can apply one late charge, and the question is how you apply it is different from how much she pays on a given month. Right, but as it relates to applying one late charge, what that language refers to is if the borrower doesn't make a June payment and doesn't make a payment in July and doesn't make a payment in August, for the months of July and August, that borrower cannot be charged a late fee for the June payment again. Mr. Moffitt, I have a question I want to ask just in terms of what this means. This is a loan that Mrs. Williams took out, $2,720.72. She used to make these payments over a period of 36 months, $102.23, at an interest rate of 20.24%. She makes the payments initially, and then she makes a payment late. She incurs a $25 payment or late fee. Thereafter, she pays it in theory. Let's say she continues to pay the $102.23. Under your analysis, will she ever pay off this loan? Yes, she has paid off this loan. Understand what I just said? Will she ever pay it out under your analysis that if that $25 from the first late payment becomes a deduction to the second payment, which then becomes a deduction to the next payment, which then becomes a deduction, so in December, you're paying nothing but late fees, and then by January, you're paying late fees on late fees. Will she ever pay it off? I think over time she will, and let me point out. She's only paying late fees. But she's not, Your Honor. If you look in the record, the December payment, if you add the principal that was owed the prior month. I see what you're saying. You're saying in January, when she pays that payment, it's going to pay off that late fee, and then you're going to assess another $50, but it keeps going, and somewhere probably 20 years from now, she will pay this off. No, Your Honor, because in this case, she did pay it off. You don't have to use your hypothetical. You can look at her transaction. I'm asking you on the scenario given, if she continues to pay at the $102.23, every payment it missed one, but never pays that $25, when will she pay that loan off? Off the top of my head, I don't have an amortization table, but it would be paid off. It won't be 36 months, will it? No, it won't be 36 months. It probably won't be 10 years. I know it won't be 36 months. I'd agree with you on that point, Your Honor. It would not be 36 months. And I'd point out that that is not what happened in this case. There are two instances where that happened, in December and February. There are other instances where she made a payment on time, didn't include a late fee, and was not charged a late fee. You can look at if you – Why is – I heard Judge Niemeyer's earlier question to the opponent. Why wouldn't it be – it just seems fair. You got your late fee, but what the late fee does is extend the payment. I mean, you keep paying your payments. You already charged a 20.24%, plus you got this late fee, which I assume is getting interest too. And you'll get that at the end. I mean, but even if you are getting such a thing, who's going to probably challenge that? First, let me clarify, you don't get interest on the late fee. That's the reason why the late fee is taken first, because – The late fee is like a nice penalty. I mean, it's like found money. It's $25 on a loan. And, by the way, it's either 10% or $25, which is the greater, right? So you could – 10% can be more or less? How does that work? No, it can't be anything more than $25. At some point during the loan term, Landmark changed the policy and went with the 10%. So it was actually less. At some point during the loan term, if you look at the payment history, the late fees go from $25 to actually 10%, which is, what, about $10. So it did change during the life of the loan, but no more than $25. The note says the first payment is $102.23, defines first payment. Other payments, $102.23. Then it says, for the purpose of computing late charges, all payments, $122.23, by Williams shall be applied to scheduled payments in the order they become due. Each payment will be applied first to late charges, then to accrued interest, and then to principal. This is what the note says. Now, it seems to me that payment is still the $102.23. What you're going to do is you're going to give the $25 and the interest. But by the time you get to December, she has accumulated late payments. So the $102, probably is five late payments, wipes it out because it's $25 apiece. That one, she gets a late charge because she made the payment. And you applied something to it, a late charge, even though she made the payment under the note. First, let me correct the record, and then I'll address the legal issue. In fact, when Ms. Williams made her December payment, you had the $102.23 of the installment. And then under Lenmark's calculation, you had another $58 of unpaid principal from the prior month. That is not what the note does. The note says to take that $20, $102 she paid, and apply it to that first, and then apply it to interest, and then apply it to principal. It didn't say that you have to charge her an additional amount. You wanted her to pay $170, wasn't it? $106 would pay off the balance the principal owed in November, and then the $102 would be able to pay off the principal and interest that was due in December. Well, okay. I don't understand how you can suggest that the note defines a payment as $102, and then it says when you receive the $102 payment, it tells you how to apply it. If the way you construe it, it would mean you never apply it to late charges, because the late charges would have to be paid separately. No, I believe— Or in addition. But it doesn't say that it has to be paid in addition. It says to apply the payment. It didn't say pay in a larger amount. It says the payment that's defined shall be applied first to late charges, then interest and principal. Correct. And again— She made the payment. I think Lenmark was trying to reconcile that with the terms of CLEC, which says all payments. Not all payments are due under the agreement. All payments. Any and all payments made by the borrower. If the borrower pays $50, makes a partial payment. If the borrower pays $300, pays in advance. It says shall be applied to the satisfaction of scheduled payments. I agree with Your Honor that— Well, that's the order of payments. That means the oldest one comes first. Exactly. She has a late charge from June. She has a late charge from July. She has a late charge from August. In December, you're allowed to take that payment and apply it to the June, July, and August, which means she's going to end up paying very little to the current month. Correct. So that would be a partial payment in December. No, it's not. It's a payment. It's $102. That's what she promised to pay. But that payment is representative of the principal and interest that is due each month. It does not factor in— The note says just to the contrary. The note says a payment shall be applied to late charges, interest, and principal. In that order. Correct. To make it clear that scheduled payments would include late charge and accrued interest and principal. Scheduled payments are defined to be $102.23. I don't believe anything in the record defines the $102.23 to be the scheduled payment. It's the installment payment. It's the installment amount. But the term scheduled payment— I was going to the note. What the note actually says, that $102.23 is applied to. Your point is being made, but I think you're arguing it's two different things. I mean, you're stuck with this scheduled payment business. He's dealing with the language of the note here. In other words, the note as I understand it— And yours seem to be changing. The note as I understand it, she keeps paying installments defined by the note to be $102.23. She keeps paying it until the whole debt's paid. And the whole debt includes late charges, principal, and interest. But she keeps paying those same payments and extending it out. And she can get rid of those late payments in one installment on time. That takes care of four late payments. And she did take care of it eventually. But you expected from her $102.23 plus $50.00 in December. And the note doesn't justify you to expect the $50.00. She made a payment as promised, on the date promised, in December. I understand that. I would go back to the record in this case. That is not the claim that was pled in the complaint. That is not the claim that Judge Quarles dismissed when he granted the motion to dismiss. Rather, the claim that was before the court was that Lendmark violated CLEC when it applied the payments first to late fees, then to accrued interest, and then to principal. Sounds to me like you have a pretty good point on that, that you can apply it to just that order. I would agree, and that's why the district court's dismissal of that claim was proper. Now, this court may recognize a different claim, but that claim isn't before this court. That claim was not pled below. But didn't you impose a late charge in December? Yes, we did. And they argue you shouldn't have charged a late charge then. Because of the manner in which the prior payments were applied. Correct. Well, you know, we are here trying to decide how Maryland, the highest court, the Court of Appeals, would decide this issue. And I'm comfortable with telling Maryland what its law is. I know Judge Ameyer is. He's a Maryland lawyer and the whole bit. But this seems like it's a pretty important point here. If this is the effect of this statute to be what it is, why wouldn't we just certify this issue to the Maryland Court of Appeals, tell them, is this Maryland law or should we be making this? Yes. Because I think that's the best we can do on it. If it goes in the direction you're going or either the other side, shouldn't we just certify this, get the answer from Maryland Court of Appeals, be done? I don't believe that would be proper for several reasons. First, the answer is a matter of statutory construction and interpreting the note, and I think this court is equally capable of interpreting it. Yeah, equally. I don't know about equally capable. What O'Weasley is, it's a good app, but if Maryland goes some different ways, the Court of Appeals is the definitive law for that. And it seems to me this is a case, you have a $2,700 note in which you get payments for 102 for 36 months at 20% based upon your utilization as clerk, and yet this late fee, you've been dealing with the semantics. Judge Niemeyer is talking about the note and how that payment should be paid. Your position is, no, this payment should come out of there and therefore make every payment late down this line for which you get another fee. I still don't figure out how you ever pay it off, but I'm sure you pay it off at some point in time, as you say. But I think you're going to have to pay more than $102.23 to pay it off at some point in time. You can't just pay $102.23 and pay this note under your scenario, in my opinion. I just don't know how you do it. Maybe you can. Well, again, I think we're mixing. But that's not a certification question because you say it's not proper, but it looks to me like it's just the kind of case you want to do. Who wants a Court of Appeals, a federal Court of Appeals, telling Maryland what its law is on something as important as this to its citizens when that is exactly what the highest court in Maryland should be doing? And we've got a vehicle to ask them. It's just a matter of asking them. They don't even have to take it. They can say, no, we don't want to decide it. So, Gwen, I see my time's up. May I answer your question? I think what we're talking about is the pyramiding issue, not CLEC and not the promissory note. I believe what we're talking about is the FTC rule that concerns pyramiding. And what I'm suggesting is that is not before this Court. That if that claim was before this Court, I would say we should decide this issue. But I think the Court can reach, can affirm the district court's dismissal. It's not before us, even though it's a federal law and it's out there and we see it right in front of us and see something is not quite right here because they didn't bring it up or because it wasn't in the briefs and we should hold it to say, well, as long as the party doesn't do it, you can keep on charging late fee and down the road. Not only is it not in the brief, it's not in the complaint. If you violate the rule against pyramiding under the FTC rule, there's no private cause of action under the FTC rule. What it is is a deceptive trade practice, which would be a Consumer Protection Act claim, which is not before this Court. Ms. Williams did bring a Consumer Protection Act claim. That claim was dismissed by Judge Quarles, and she chose not to appeal that issue. The Maryland Court of Appeals could tell us that. I mean, they could tell us, well, we're not even going to answer it because she didn't bring it up, but we don't see it that way. But at least the Maryland Court of Appeals could tell us what they think the statute means. It's their statute. May I answer that, respond before I sit down? What I would suggest is then the issue is not necessarily revolving around state law, but it's revolving around the FTC rule. And that's why I think this Court is more than capable to deal with this issue, to consider Judge Quarles' decision on the motion to dismiss and on the motion for summary judgment and affirm both decisions based on the claims that were properly brought before Judge Quarles and decided. Thank you. Thank you, Mr. Moffitt. Mr. Zardel. Thank you. Next. When Landmark entered into this loan agreement with Ms. Williams, they expected a certain return on capital on a monthly basis. And I believe this is what Judge Niemeyer was getting at when I originally came up and started to argue. And that return on capital was $102.23 a month. That is exactly what Ms. Williams did and then even more than that. She paid more than what the expected return on capital was on a monthly basis, although sometimes late, at least through February 2011. That's not an answer to anything. She promised to pay $102 on the first of the month. That's what she had to pay. And if she paid on the 10th of the month, she gets a $25 late charge. Correct, Your Honor. Right. And so this is not an argument of a return on capital. You should pick up that note and just follow just what Judge Niemeyer has given you. That's what I'm getting at, Judge Wayne, is that the payment responsibility was $102.23. She paid more than the $102.23. But that's because she was required to. Not each month, but she was required to pay $102 until she discharged back charges, interest, and principal. Correct. And regardless of how it was applied, she still made the payment that was required by the note, $102.23. It was actually $102.23. You said you were going to look at February and April to see whether she made that on time. You said there were payments that she made within five days, and they charged a late charge. Well, Your Honor, I went back through the payment history, and there are several. You were going to tell me which ones specifically. Isn't that what you promised to do? Yes, well, there's 10 or 12 of them. They were all late. Correct, Your Honor. Oh, I'm sorry, Your Honor. You made the argument during your direct argument that she made payments within five days, and they still charged a late charge. The only ones I know about is the December and the February one. Your Honor, I think that when I'm referring to her making a timely payment and still being charged a late fee, I'm talking about instances where the assessment of the late fee was charged on the day between 530 or 8 o'clock in the midnight on that fifth day, where she did make the payment on the second or the first or the third, but the reason that that late charge was still. Give me an example. That's what I want to see. When did she make a payment on the second? The December 1st payment. Well, now hold it. That's the special exception where we've been talking about where she paid a timely payment, but they charged a late fee because she didn't pay her late charges. That was only in December and the following February. Your Honor, that's the type of payment. Not the type, those two. Any more? I mean, you should know this record, don't you? I believe so, Your Honor. All right. She makes a payment on April 5th, 2013. She gets charged a late fee. April 8th, 2013. April 8th, you say? Correct. That's when the late charge is assessed onto the account. Why? I thought it was due on the 5th, within five days. Right, and then landmark in their servicing practice, if the late fee falls on a Sunday or a holiday, they don't put it on the account until the next day. That doesn't have anything to do with the payment. She owed a payment. Right, and the payment was made on the 5th. And she had a five-day grace period. Correct, so the 5th. And if the grace period fell on July 4th, then she'd have to make it before July 4th. Correct, and she makes the payment on the 5th. So that's within the five-day grace period. Oh, you said 5th. I thought you said 8th. The 8th is when the late charge is assessed. She makes a payment for that month on the 5th. On April? April 5th. Okay. Yeah, so, and in that instance, landmark would say the reason that that. And where can I find that in this record? That's on JA-60. The late charge on 3-5-2013 payment. I'm sorry. Right, 4-5-2013. Mailed payment. You guys really made this hard to read. This has got to be in .1 font. We could submit another copy, if it would please the court. Yeah, actually, that would be good. Thank you. Okay. I'd also like to address the certification issue, which I filed the motion for certification. This issue is much broader than this case. There are numerous consumer finance entities, numerous car lending entities, numerous banks that have the same policy. Not all of them, but there are many. And it affects tens of thousands of transactions. In this case alone, although I don't know how many people were assessed a late fee on a late fee, the practices alleged in this complaint was removed to the federal courts on the basis that there were 175,000 occasions where a late fee was charged, or 175,000 consumers that were affected by the allegations in the complaint. So this has broad scope. I do think it's also the type of case that's not likely to proceed up the state court level to the Court of Appeals, and the resolution at the highest level in the State of Maryland would be not easy to get to in any other manner. So to that extent, I think certification on the late fees issue is appropriate. And with respect to the day issue, if the court is interpreting, which is my understanding the question was, the court is interpreting the assessment of the late fee to have no importance. You haven't made a case as to why when they assess it has any relevance. The reason is she has to pay a late charge if she doesn't pay within the grace period. And when they book it, it doesn't matter. Well, Your Honor, I see my time has expired. Can I respond to that? Yes, sure. Although it's presented by landmark as saying it's an internal accounting procedure, it's not just an internal accounting procedure. Ms. Williams receives monthly statements, which is in the record, two monthly statements. And in those monthly statements, which demands payment, it says that the late fees were assessed on the fifth day of the grace period. It doesn't say what time they were assessed. I understand, but she never paid it, right? She didn't pay it on time except where you're contesting it. I want to ask him, I want you to take a look at the April 5th payment on page 60 and give me an explanation. Go ahead. So what I'm saying is when she's presented with your payment was due on this date, it causes a difference in action. So she sees from this statement, my payment is due. It's actually I have to pay it before the 6th, before this date, or I'm going to get hit with these late fees. So it's a way that landmark can intrude upon the person's repayment to require repayment earlier. Yeah. Thank you. Mr. Moffitt, I just wanted to ask you to stay right there. I just wanted to ask you, what's your explanation? I'm able to see this April 5 payment. It says April 5, and then it does have you charging a late charge. Yes, Your Honor. As Your Honor recognizes, the installment, the amount that was required each month, was $102.23. Right. The payment in April was not for $102.23. Okay. So your explanation is she didn't pay the full payment. Correct. Okay. Thank you. All right. Any further? No. All right. We'll come down in Greek Council and proceed on to the last case.
judges: Paul V. Niemeyer, James A. Wynn Jr., Thomas E. Johnston